## A. L. P. GREEN *vs.* M. M. BRIEN & others.

### October Term, 1873.

TRUST—RECEIPT OF CONFEDERATE MONEY—INVESTMENT THEREOF.—G., being indebted to S. as administratrix, for borrowed money, paid the debt in Confederate treasury notes to T. as her agent. Afterwards, S., as administratrix, sued G. at law on the original debt, and recovered judgment upon the ground that T. was not her agent to collect the debt, and the payment had never been ratified by her. G. paid the judgment, and filed this bill against S., and the distributees of the estate of which she was administratrix, to recover the value of the Confederate money. *Held:*

1. That the complainant was entitled to recover of S. the value of so much of the Confederate money, or its proceeds, as came to her possession, and was invested or used by her, or her direction, the same being a trust fund in her hands for his benefit.

2d. That the complainant was entitled to recover from the guardian of the infant distributees the proceeds of the Confederate money which came to his hands as guardian, he receiving the same with full knowledge of the facts, and never having paid the same over to his wards.

3d. That the complainant was also entitled to any notes, judgments, or other evidences of debt based upon such Confederate money in the hands or under the control of the defendants, but must bear the expenses of collection, and any loss incurred without any fault of the defendants.

EXCEPTIONS—MASTER'S REPORT.—It is no sufficient ground of exception to the master's report that it was not made to the next term as required by the order of reference.

*H. E. Jones*, for complainant.
*M. M. Brien*, for defendants.

THE CHANCELLOR :—The complainant, being then indebted to the defendant, Helen Shurer as administratrix of the estate of her husband, Charles Shurer, deceased, by two notes for borrowed money, in the month of January, 1862, paid the amount then due upon said notes, $8,925, to James Tubb, the father of the said Helen Shurer, and her agent in making the loan to complainant, and received from Tubb his notes. The payment was made in Confederate treasury notes by one T. D. Price, as the agent of complainant, and the complainant's notes were delivered to said agent. Afterwards, on the 22d of September, 1865, the said Helen Shurer, as administratrix, brought her action at law against the complainant for the recovery of the money due upon said two notes so taken up as aforesaid, and such proceedings were had in said suit that she recovered a judgment against the complainant for the full amount of said notes, which judgment was affirmed by the supreme court, and, on the 20th of April, 1867, the judgment thus recovered was paid by the complainant to the said Helen Shurer, administratrix, in full.

This bill was filed on the 23d of March, 1871, against Helen Shurer individually and as administratrix, M. M. Brien individually and as guardian of the infant children and distributees of Charles Shurer, deceased, and against said infant children, and Oscar Hill and Josephine his wife, formerly Josephine Shurer, another child of Charles Shurer, setting

forth the foregoing facts, stating that the Confederate money, paid in January, 1862, as aforesaid, had been loaned out on notes with good security by the defendant, Helen Shurer, or otherwise used by her, that the notes thus taken had been collected by her or by defendant, Brien, and seeking to reach the proceeds of the said Confederate money in the defendant's hands.

Such proceedings have been had in the cause, that on the 5th of July, 1872, a decree was rendered by my predecessor, that the complainant was entitled to recover of the defendant, Helen Shurer, administratrix, etc., the value of said Confederate money at the time of said payment, if paid to her, or so much thereof as came to her possession or under her control, or the proceeds thereof in case said Confederate money was invested or re-loaned by said Helen Shurer, administratrix, etc., or by her direction. The court further held that so much of said Confederate money, or the proceeds thereof as came into the possession or under the control of said Helen Shurer, administratrix, etc., on the payment of said judgment by complainant, became in her hands a trust fund for the use and benefit of complainant. The court reserved the question of the liability of M. M. Brien, guardian, etc., and of the other defendants, for further proof. It was referred to the clerk and master to ascertain and report:

1. The time of the payment of said Confederate money by the agent of complainant to James Tubb.

2. The value of said money at the date of such payment.

3. The amount of such money that came to the hands or under the control of said Helen Shurer, administratrix.

4. The amount invested or re-loaned by her, or under her direction or control, if any, and how invested, and to whom re-loaned, and the amount of the proceeds of said investment or re-loans.

5. The date and amount of any judgment or notes in her possession, or under her control, not yet collected, based on said Confederate money, with the names of the parties to

said notes and judgments; and also, whether any of this fund, or the proceeds has come to the hands of M. M. Brien, Sr., as guardian, etc., or either of the other defendants, and if so, what amount, when and from whom.

Under this reference, the clerk and master, on the 14th of September, 1873, made a report which is satisfactory to the complainant, but not to the defendants, who have filed various exceptions.

The first of these exceptions is to the whole report as improperly taken, and upon assumptions without foundation, because:

1. There are on file and annexed to certain depositions filed by complainant, "protestations and exceptions, all of which are referred to in support of this part of the exception."

2. The decree of reference directed the account and report to the October term, 1872, which was not done, and there was, therefore, no decree or consent authorizing the account to be taken.

3. The report is based upon illegal and incompetent testimony taken and filed after the time set for the account had passed, and taken during the October term, 1872, without leave.

The first of the grounds assigned in support of the first exception, is entirely too vague and general, under the rules of practice in regard to exceptions to reports, to be noticed. It should have pointed out specifically, with reference to the pages of the record, what "protestations and exceptions" are relied on as being in conflict with the assumptions of the clerk and master. As it stands, it would require the court, if noticed at all, to go over a voluminous record, and a multiplicity of protestations and exceptions, and search, as for a needle in a hay-stack, for one which may, peradventure, have merits. This would be an unreasonable requirement, and cannot be entertained.

The second ground assigned, that the decree of reference of the April term, 1872, expired with the commencement

of the October term, 1872, is undoubtedly correct in theory. But, by a practice of this court, which has prevailed from its first existence, there has always been a general order at the expiration of each term, reviving all unexecuted orders and decrees. This general order, upon the theory which still prevails where it works to the ends of justice, that the whole term is considered but as one day, relates back to the commencement of the term, and renders valid whatever may have been done, precisely as if the entry of revivor had been made on the first day. I think it probable, moreover, that even if there were no such general order, the order of renewal is so much a matter of course that the court would allow it to be made, or consider it as made *nunc pro tunc*, as was formerly the case with formal entries of the issuance of *fi. fa.* to keep alive a judgment. But it is not necessary to decide this point at present.

The third ground is based upon the second, and must go with it. And, moreover, the mode of taking advantage of the supposed fact relied on was by exception to the depositions, not to the report.

The first exception of the defendants to the report of the clerk and master, is, therefore, not well taken, and must be disallowed.

The second exception is that the master is not sustained by the testimony in fixing the time of the payment of the Confederate money by Price to Tubb as on or before the 13th of January, 1862, whereas the proof shows that the time was not earlier than the 18th or 24th of January, 1862. This exception has made it necessary to read the entire testimony in the cause. It goes to the very basis of the report, and upon it depends the extent of the complainant's recovery. I have, accordingly, read the whole record, and especially the depositions of the witnesses mentioned in the exception. The evidence is conflicting and utterly irreconcilable. Tubb is dead, and the recollection of Price, who paid the money, fails him. The proof is, however, clear that the Confederate money was drawn from bank at Nash-

31

ville on the 10th of January, 1862, and that the agent started with it to the residence of Col. Tubb, about 60 miles distant, on the same day, and that the journey could be made in a day and a half. The persons who seem to have borrowed the Confederate money from Tubb after it was paid to him, have no interest in the litigation, and no inducement, therefore, to deviate from the truth. One of these deposes to the borrowing $200 on the 13th of January, 1862, which he understood from Tubb at the time was money received from Green. Francis Turner's testimony is far more conclusive. He proves that he borrowed on the 14th of January, 1862, from Tubb, the sum of $1,377.10 according to the clerk's estimate from the data of the witness, which Tubb told him was part of the money paid to him by Price for Green. The notes given by these witnesses bear these respective dates, and coupled with their positive testimony, and the other dates established beyond dispute, are far more weighty than the unaided recollection of witnesses in so uncertain a matter as that of date after the lapse of so many years. I think the weight of the testimony is in favor of the clerk and master's ruling, and the defendant's exception must be disallowed.

The third exception as to the value of the Confederate money, must also be disallowed. The only testimony upon this point is the printed statement on the face of the card of the National Savings Co. of Nashville, showing the average value of one dollar in gold as compared with Confederate notes during each month of the war, from May, 1861, to April 1, 1865. This card, it was agreed by the counsel of both sides in writing, might be used as evidence as if the depositions of brokers were taken, and to have the same effect. The value of the currency at Nashville, as the commercial centre of middle Tennessee, would *prima facie* regulate the value in De Kalb county.

The fourth exception is to that part of the report which states, that, while there is no satisfactory proof that any of the money paid by Price to Tubb came actually to the hands

of Helen Shurer, yet that the whole of it came to the hands of James Tubb, the father of Helen Shurer, "and her recognized agent in the transaction of her business, and further that many of the notes taken by her father on loans of this money were received by her from her father, and afterwards placed in the hands of M. M. Brien for collection." The exception is that the first part of the paragraph is alone in response to the order of reference, and exonerates Mrs. Shurer, while the latter is gratuitous, and not sustained by the proof. I do not think so. The clerk and master was directed to report "the amount of said Confederate money that came to the hands or under the control of said Helen Shurer, administratrix." The clerk's report is that while it is not shown that she had *manual caption* of the Confederate money, James Tubb, who was her agent, did have it, and she received notes taken by him for loans of said money and placed them in Brien's hands, for collection. The clerk and master does not mean that Tubb was her agent to receive the money, for this point has been settled otherwise by the supreme court, but her general agent. The legal effect of this is to place the whole of the money under her control, which was then used and loaned, if Tubb was her agent for the purpose of loaning the money, or if his acts were ratified by her, and of this there cannot be a particle of doubt, to the extent of the money thus loaned, the notes for which were received by her as reported by the clerk. All of the proof, and even the testimony of Mrs. Shurer herself and of M. M. Brien, Sr., and notably of D. Brien, establishes beyond question that he was her agent in fact, whose acts, and particularly his acts touching the use of this very money, were recognized and adopted by her. She, and her learned counsel seem to labor under the impression that this fact, about which there cannot be the least doubt, is neutralized by his and her denial of any formal power of attorney, or formal creation of an agency, and that he chose, of his own accord, to act as agent without authority. But even if it were a fact, which is more than questionable, that

he declined to become a regularly accredited agent, yet, if he did in reality do acts as her agent, and in her name, which she afterwards received the benefit of, it would be a refinement, equal to splitting a hair between the north and the north-west side, to allow that what was done might inure to her benefit so far as it was beneficial, and should have no efficacy so far as it was disadvantageous. The law recognizes no such refinements, and makes all the acts hers of which she chooses to receive the fruits in any way and to any extent. Disallow the exception. 3 Head, 530; 4 Hum., 394; 2 Heisk. 450; Story, Ag., §§ 250, 251, 253, 260, 451.

The 5th exception is only a repetition of the 4th, with a slight change of phraseology, and must go with it. And so of the 6th exception.

The 7th exception as to the amount of Confederate money found to have been loaned or used by Col. Tubb, is too general. The exception should have designated the particular items erroneously reported. The court cannot undertake to make out a new account of items upon the argument, and so far as I can see the report is correct.

The 8th exception of the loan to Gossett is untenable. A careful examination of Brien's deposition satisfies me that he was sent South early in 1862, and that Gossett did, as he testifies, borrow part of the Southern money brought back by him, and give his note therefor in June.

The exceptions are all, therefore, disallowed, and the report confirmed.

The only question which remains is the one reserved by my predecessor, and that is, the liability to the complainant of M. M. Brien, Sr., and the defendants other than Helen Shurer. The opinion of my predecessor was that Mrs. Shurer was bound to refund "whatever of value she received in the first instance or came under her dominion and control," and that after she repudiated the payment, and up to the payment of the judgment in her favor by complainant, the money received, or its proceeds, so coming under her dominion and control, "became a trust fund for the use and

benefit of complainant." If so, the complainant has the right to follow this trust fund into whosesoever hands it may come with knowledge. Of course, as the acknowledged legal adviser and attorney of Mrs. Shurer, the defendant Brien must have known that whatever part of the fund, thus burdened with a trust, came to her hands was not her property, nor that of the estate of which she was administratrix, nor, of course, of the distributees of whom he was guardian. Whatever portion of this fund he may have received, therefore, whether by collection from the debtors to whom it was loaned, or from the administratrix, as guardian, and had in his hands at the time of the filing of the bill, and whatever may have since come to his hands, he would be liable for to the complainant.

I am inclined to think that what passed between the defendant, Brien, and S. M. Fite as the attorney of complainant, at the taking of Tubb's deposition, as deposed to by Fite and the magistrate by whom the deposition was taken, did not create a personal obligation on the part of said defendant to the complainant. It was simply an engagement for his client that she would hold any money she might recover in trust for the complainant, in the event she recovered in the suit then pending against him, and was only in affirmance of the trust or obligation which the law would impose upon her, and has imposed upon her. But the point is not very material, for the defendant admits that he has not paid over to either of his wards, or to Mrs. Hill and her husband, any part of the funds thus charged with a trust. He has, doubtless, retained the same, as he was in duty bound to do, knowing, as he did, that the estate had no claim to it, after he had commenced the suit in favor of Mrs. Shurer as administratrix against the complainant. He cannot rely upon any payment made in ignorance of the character of the fund, for it was his duty to inquire into the facts under the circumstances, and to base his acts upon such inquiry, which it is not pretended by him that he did do. If, however, he had actually paid over any of such trust funds to any of his

wards innocently, after due inquiry, he would undoubtedly have had the right to show the fact, and to have compelled the complainant to go upon his said wards.  Of course no settlement he may have made with the county court, however innocently, is binding upon the complainant, nor will such settlement prejudice him.  He has the right upon the rendition of this decree to apply for a modification of his settlements so as to make them conform to the rights of his wards under this decree to which they were parties.  Any amounts with which he may be charged by this decree as guardian, he will be entitled to claim a credit for in his settlements as guardian, whether such settlements have already been made, or remain to be made in the future. 3 W. Jr. 248.

The complainant is entitled to a decree against Mrs. Shurer as administratrix and individually for the amount of money shown to have been received by her by the report of the clerk and master, and against the defendant Brien, as guardian, for so much of the trust funds as were in his hands at the filing of the bill, or have since come to his hands.  There will be a reference to the clerk and master to ascertain these amounts with interest to the date of the report, for which the complainant can take his decree.  The complainant is also entitled to have transferred to him any notes, judgments, Confederate money, or other assets not actually collected which may belong to the trust fund.  The defendants, Helen Shurer and M. M. Brien, Sr., as guardian, will pay all the costs. These defendants, or either of them, may apply to the court for a decree adjusting their rights as between themselves under the liability created by the decree when the clerk's report is made upon the reference just ordered.